# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee,*

v.

**SERVILLANA SORIANO,**

*Defendant-Appellant.*

APPEAL FROM THE DISTRICT COURT FOR

THE DISTRICT OF THE NORTHERN MARIANA ISLANDS

Case 1:20-cr-00007-RVM-1

## UNITED STATES' ANSWERING BRIEF

SHAWN N. ANDERSON, United States Attorney
Districts of Guam & the Northern Mariana Islands

Albert S. Flores, Jr., Assistant United States Attorney
2nd Floor, United States Courthouse
P.O. Box 500377
Saipan, MP 96950
(670) 236-2980

Attorneys for Plaintiff-Appellee

**TABLE OF CONTENTS**

I.  ISSUES ................................................................................. 1

II.  STATEMENT OF THE CASE ............................................. 1

    A.  Investigation ....................................................................... 1

    B.  Procedural History............................................................. 3

    C.  Soriano's Trial ................................................................... 5

        1. Government's Evidence ............................................. 5

        2. Final Jury Instructions............................................. 12

        3. Verdict...................................................................... 12

    D.  Sentencing ....................................................................... 13

III.  SUMMARY OF ARGUMENT ............................................. 13

IV.  ARGUMENT ...................................................................... 14

    A.  The testimony of Officer Verma did not amount to false testimony that was material Constitutional error; even if the testimony was false, it was not material and therefore harmless. ......................... 14

        1. Standard of Review ................................................. 14

        2. Background Law ...................................................... 15

        3. Argument.................................................................. 16

    B.  The district court did not abuse its discretion by admitting statements Soriano made to HSI, but if it did, any error was harmless ......................................................................... 20

        1. Standard of Review ................................................. 20

        2. Background Law ...................................................... 21

        3. Argument.................................................................. 21

    C.  The Government's evidence was legally sufficient ...................... 24

        1. Standard of Review ................................................. 24

        2. Statute and Essential Elements ............................... 25

        3. Argument.................................................................. 27

V.  CONCLUSION..................................................................... 28

# TABLE OF AUTHORITIES

**Cases**

*Alcorta v. Texas*, 355 U.S. 28 (1957) ........................................................... 16
*Chee v. United States*, 449 F.2d 747 (9th Cir. 1971) ................................... 20
*Coleman v. Johnson*, 566 U.S. 650 (2012) ................................................. 24
*Dow v. Virga*, 729 F.3d 1041 (9th Cir. 2013) .................................... 14, 15, 16
*Hall v. Director of Corrections*, 343 F.3d 976 (9th Cir. 2003) ................... 15
*Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005) ..................... 14, 15, 16, 19, 20
*Jackson v. Virginia*, 443 U.S. 307 (1979) ................................................... 24
*Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) .. 15
*Napue v. Illinois*, 360 U.S. 264 (1959) ....................................... 14, 15, 16, 17
*Pyle v. Kansas*, 317 U.S. 213 (1942) ........................................................... 16
*United States v. Agurs*, 427 U.S. 97 (1976) .......................................... 15, 20
*United States v. Aifang Ye*, 808 F.3d 395 (9th Cir. 2015) ........................... 21
*United States v. Boskovic*, 472 F. App'x. 607 (9th Cir. 2012) .................... 23
*United States v. Garcia*, 16 F.3d 341 (9th Cir. 1994) .................................. 21
*United States v. Hollis*, 490 F.3d 1149 (9th Cir. 2007) ............................... 21
*United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991) ..................... 21, 22
*United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010) ......................... 24, 25
*United States v. Orm Hieng*, 679 F.3d 1131 (9th Cir. 2012) ....................... 23
*United States v. Romo-Chavez*, 681 F.3d 955 (9th Cir. 2012) .................... 21

**Statutes**

18 U.S.C. § 371 ................................................................................... 1, 3, 25
18 U.S.C. §§ 6001-6003 ................................................................................. 9

**Rules**

Fed. R. Crim. P. 16 ......................................................................................... 3

**Other Authorities**

Ninth Circuit Manual of Model Criminal Jury Instructions No. 8.21 (2010)
....................................................................................................... 26, 27

# I.     ISSUES

Below, a jury found Appellant-Defendant Servillana Soriano ("Soriano") guilty of one count of Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371.  She now raises the following issues related to her conviction on appeal:

1.     Did the prosecution knowingly permit the introduction of false testimony by a witness?

2.     Did the lower court abuse its discretion by admitting the written statement of Soriano made to investigators, which was made through an interpreter?

3.     Assuming the lower court erred in admitting any of the foregoing evidence (*see supra* Section I at 1-2), were the errors nonetheless harmless?

4.     After reviewing the evidence in the light most favorable to the prosecution, could any rational trier of fact have found that the essential elements of Conspiracy to Defraud the United States were proven beyond a reasonable doubt?

# II.    STATEMENT OF THE CASE

## A.    Investigation

The Commonwealth of Northern Mariana Islands ("CNMI") Only Transitional Worker Program (commonly known as the "CW-1 Program") is a mechanism whereby businesses in the CNMI can petition to the United States government, so that foreign citizens may obtain temporary immigration status (a

"CW-1 visa") to work for that company. 3-ER-484-86. In 2017, United States Homeland Security Investigations ("HSI") began investigating Misamis Construction Company ("Misamis Co."), based on reports that the company was submitting fraudulent petitions to United States Citizen and Immigration Services ("USCIS") on behalf of foreign citizen beneficiaries. 3-ER-457. The basis of the fraud was that Misamis Co. was submitting petitions to USCIS so foreign beneficiaries could obtain CW-1 visas, but Misamis Co. was not actually employing these beneficiaries as required under the CW-1 Program. *Id*.

In 2020, HSI Special Agent Frederic Jonas ("SA Jonas") became the lead case agent for an expanded investigation of this fraud, which included an investigation of RES International, LLC, a company on the island of Saipan in the CNMI. 3-ER-457. HSI determined RES International, LLC was also submitting petitions for CW-1 visas under the same fraudulent guise as Misamis Co. *Id*.

In the course of investigating RES International, LLC, SA Jonas interviewed Soriano, a manager at the company. 3-ER-457. SA Jonas interviewed Soriano on March 27, 2020, which included a discussion of Soriano's role in petitioning for CW-1 visas on behalf of RES International, LLC, for three Bangladeshi citizens as the beneficiaries. 5-ER-854-61. At a second interview of Soriano on April 17, 2020, SA Jonas obtained a signed written statement from Soriano that summarized part of the information provided during the March 27, 2020 interview. 5-ER-862-72; 5-ER-

890-97. With this signed statement by Soriano, where Soriano admits to her culpability with submitting fraudulent CW-1 petitions, and with other evidence obtained by HSI during the multi-year investigation, Soriano and two co-defendants were indicted on July 30, 2020, charging a sole count of Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371. SER-47-48.

## B.    Procedural History

On March 25, 2021, a Grand Jury issued a Second Superseding Indictment against Soriano, charging her with one count of Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371. 2-ER-203-204.

On April 22, 2021, the district court issued an amended memorandum decision denying Soriano and her co-defendants' motion *in limine* to exclude or limit the testimony of USCIS Senior Immigration Officer Monica Verma ("Officer Verma") at trial, based on an argument that the Government provided inadequate notice for expert testimony pursuant to Fed. R. Crim. P. 16. 1-ER-72-78.[1]

Jury selection for Soriano's trial began on June 29, 2021 [SER-31-32], and a three-day jury trial commenced on June 30, 2021. SER-28-30; *see also* SER-23-27.

During the trial, amidst the testimony of Officer Verma,[2] Soriano's legal counsel argued that Officer Verma's testimony was false as it pertained to whether

---

[1] The basis of this memorandum decision is not at issue on appeal.
[2] Officer Verma testified as lay witness and not as an expert witness, notwithstanding appellant's repeated characterization and use of the term "expert" testimony in this appeal. *Cf.* Appellant's Opening Br. p. 24 n. 3. Regardless, whether Officer Verma

petitioners of CW-1 visas are prohibited from collecting fees for such petitions from the foreign beneficiaries of the CW-1 visas. Appellant's Opening Br. pp. 48-51. The district court denied Soriano's defense counsel's request that the Government should be required to correct Officer Verma's testimony, and the court instructed that any cure necessary would be accomplished through further cross examination. *Id*. Without conceding that Officer Verma's testimony was false, to ensure due process, the Government agreed this was an adequate cure and recalled Officer Verma for the sole purpose of affording additional cross examination by Soriano's counsel. *Id*.[3]

During the trial, Soriano also objected to the admission of the written statement signed by Soriano, admitted as evidence through SA Jonas. Appellant's Opening Br. p. 49. The district court overruled Soriano's objection at trial, admitted the written statement, and went so far as to subsequently memorialize its ruling by issuing a memorandum decision on the issue. *See* Exhibit 1 of United States' Resp. in Opp'n to Def. Mot. for Bail Pending Appeal, Dkt. Entry No. 5-2 ("Memorandum Decision Re: Defendant's Objection to the Admission of Defendant's Written Statement"); *see also* Exhibit 2 of United States' Resp. in Opp'n to Def. Mot. for Bail Pending Appeal, Dkt. Entry No. 5-3 ("Memorandum Decision Denying

---

testified as an expert or lay witness is not at issue for this appeal.

[3] The district court's reasoning for denying Soriano's request during trial for the Government to correct Officer Verma's testimony was further affirmed in a subsequent memorandum decision pertaining to Soriano's motion for release pending appeal. SER-5-11.

Defendant's Motion for Release Pending Appeal," where the district court addressed this issue and memorialized its reasoning a second time, overruling Soriano's objection to the admissibility of the written statement).

On July 2, 2021, the Government rested its case-in-chief, the district court denied Soriano's motion for judgment of acquittal, jurors began deliberations, and the court recessed for the Fourth of July holiday until deliberations continued July 6, 2021. SER-23-24. On July 6, 2021, the jury returned a unanimous verdict of guilty to the sole count alleged against Soriano. SER-22.

On September 14, 2022, Soriano filed a notice of appeal, 2-ER-350-51, and on September 15, 2022, filed a motion for release pending appeal. SER-13-21. A district court hearing for Soriano's motion for release pending appeal was held on September 30, 2022. SER-12. In denying the motion, the district court issued a "Memorandum Decision Denying Defendant's Motion for Release Pending Appeal." SER-5-11.

Soriano filed Appellant's Opening Brief on June 26, 2023, and has since completed the incarceration term of her sentence. *See* Appellant's Opening Br. p. 8.

## C. Soriano's Trial

### 1. Government's Evidence

At trial, the Government called four witnesses in its case-in-chief and admitted three exhibits. SER-23-30. First to testify was SA Jonas, who provided the background into HSI's investigation of Misamis Co., RES International, LLC and

Soriano. 3-ER-455-57. Government's Exhibit 1 (2-ER-206-316) was introduced via SA Jonas, which is the fraudulent CW-1 petition in question. 2-ER-206. The petition is known as a "Form I-129CW, Petition for a CNMI-Only Nonimmigrant Transition Worker," and this is the documentation submitted to USCIS by RES International, LLC as the petitioner, on behalf of three Bangladeshis, the beneficiaries, Aminul Islam, Faroque Hosen, and Mohammad Rasel Khan. 2-ER-207; 2-ER-215; 2-ER-217.

The Government's second witness was Officer Verma, who provided background and an explanation of laws pertaining to the CW-1 Program. 3-ER-483-84. In summary, Officer Verma's testimony included the following:

- Employers in the CNMI may petition USCIS to designate a foreign beneficiary as having CW-1 status (3-ER-485); this petition is submitted on a form designated as Form I-129CW (3-ER-491);

- The business submitting the petition is known as the petitioner, and the foreign citizen obtaining the CW-1 status is the beneficiary (3-ER-486);

- The United States Department of State is the agency that grants the actual visa, once a foreign beneficiary is designated with CW-1 status by USCIS (3-ER-485);

- A wide range of employment positions are eligible for CW-1 visas, including nurses, doctors, therapists, cooks, and auto repair (3-ER-486);

- Employers petitioning for CW-1 visas must be a legitimate business, follow laws of the United States and the CNMI, the business must operate in the CNMI, and the CW-1 beneficiary must enter into an employer-employee relationship with the petitioner business (3-ER-487);

- Employer-employee relationship is when the employer maintains the ability to hire, fire, and otherwise control the employee (*Id.*); when the petitioning employer is a manpower agency that places employees at off-site locations for labor at places other than at the petitioner business location, USCIS examines the petition to ensure a contract exists between the petitioner and the off-site or third-party business (3-ER-489-90);

- A contract between a manpower agency and a third-party business where the CW-1 beneficiary will perform labor, is the main piece of information examined by USCIS to assess whether the employer-employee relationship is legitimate (*Id.*);

- When a CW-1 petition is submitted to USCIS, the petitioner (business or attorney) is required to pay the fees associated with the petition (3-ER-493-94);

- The costs of a CW-1 petition are $460 for the I-129CW form, a $200 education fee, and a $50 fraud fee (3-ER-492); a petitioner may include multiple beneficiaries on one petition in certain circumstances, which saves

costs to the petitioner (3-ER-493);

- For three beneficiaries, the cost to be paid by the petitioner would be $460 for the I-129CW form, $600 education fee ($200 x 3 beneficiaries), and a $50 fraud fee (3-ER-493); for three beneficiaries on one petition, the petitioner therefore saves approximately $400 (*Id*.);

- Sometimes CW-1 approval requires a separate biometric fee, which may be paid be either the petitioner or the beneficiary (3-ER-493);

- Officer Verma reviewed Government's Exhibit 1 (2-ER-206-316), and noted USCIS requested additional evidence by RES International, LLC for this petition after the original submission, to prove an employer-employee relationship existed between the petitioner and the beneficiaries, and to prove that a contract existed between the petitioner and a third party where the beneficiaries would perform labor (3-ER-510-13).

The Government's third witness was Martin Jambor ("Jambor"), the general manager of Kanoa Resort on the island of Saipan. 3-ER-637-39. Jambor testified in summary:

- Halim Khan ("Halim") is a facilities manager at Kanoa Resort, and Halim did not have authority to enter into legal contracts on behalf of Kanoa Resort with other businesses (3-ER-640-42);

- When shown the purported contract between Kanoa Resort and RES

International, LLC that was submitted with the CW-1 petition for the three Bangladeshis (2-ER-207-18), Jambor noted that only Jambor as the general manager could enter into such contracts on behalf of Kanoa Resort, and that the contract included with the CW-1 petition was not authorized, nor did it fit the formatting used by Kanoa Resort when forming contracts with manpower agencies (3-ER-642).

The Government's fourth witness was Arnold Reyes ("Reyes"), who testified[4] that based on his accounting and business experience, Soriano paid Reyes for assistance with accounting and CW-1 petitions for RES International, LLC. 4-ER-682-83. Reyes testified in summary:

- Reyes was shown Government's Exhibit 1, and confirmed Reyes prepared the petition by typing the included information (4-ER-683);

- Reyes confirmed Soriano asked Reyes to complete the petition, because Soriano was submitting this petition as a favor to "Halim," the head of maintenance at Kanoa, and the brother of one of the three Bangladeshi beneficiaries (4-ER-687);

- Reyes testified that based on his previous conversations with Soriano, Soriano

---

[4] During his testimony, Reyes invoked his Constitutional right to remain silent. 4-ER-667. Consequently, the district court granted the Government's motion to compel the testimony of Reyes, pursuant to 18 U.S.C. §§ 6001-6003. 4-ER-673-76. This is not at issue on appeal.

is aware that petitions, such as this one, require the petitioner to show USCIS there is an employee-employer relationship (4-ER-691).

The Government recalled his first witness, SA Jonas to testify, and admitted its two exhibits through SA Jonas. 5-ER-853; 5-ER-859; 5-ER-916. SA Jonas summarized the interviews he conducted with Soriano on March 27, 2020, and April 17, 2020, which in summary is as follows:

- Soriano was interviewed at the HSI office on Saipan on March 27, 2020, with SA Jonas and another HSI agent present, and a certified Tagalog speaking interpreter was used remotely via telephone to assist with the interview (5-ER-854-57)[5]; the certified interpreter worked for LanguageLine Solutions, an HSI contracted company used to facilitate foreign language translation for office interviews (*Id.*);

- At the March interview, Soriano signed a *Miranda* rights waiver [admitted as Government Exhibit 2] (2-ER-317; 5-ER-858-59);

- At the April interview, with SA Jonas and another HSI Agent present (likewise, a Tagalog interpreter was used [5-ER-901-902]), Soriano signed a statement prepared by SA Jonas in the English language [admitted as

---

[5] While SA Jonas relied upon an interpreter to assist with the interview, it should be noted that Soriano does speak the English language, evident by part of her conversation with SA Jonas conducted in English (6-ER-1057), and handwritten words drafted in English by Soriano herself. *See* 2-ER-318-19.

Government Exhibit 3 (2-ER-318-19)] (5-ER-902); the statement summarized information provided by Soriano in the March interview (5-ER-901-902);

- As an investigative technique to ensure Soriano clearly comprehended the written document, SA Jonas intentionally inputted factual errors into the written statement (5-ER-890-91); SA Jonas went line by line through the statement, Soriano was asked if the line was accurate, and Soriano identified each factual error intentionally included in the statement by SA Jonas (*Id.*);

- In the signed and adopted statement by Soriano (2-ER-318-19), which states in most relevant summary:

    - Soriano runs the day-to-day operations of RES International, LLC (2-ER-318);

    - "Arnold [Reyes]" is the person Soriano pays to prepare CW-1 petitions (*id.*);

    - After the forms are prepared, I direct (my husband) Richard Soriano to sign them, and then I mail them to USCIS (2-ER-318-19);

    - I agreed to help Halim Khan by petitioning for three Bangladeshi citizens, Faroque Hosen, Aminul Islam, and Mohammad Rasel Khan; I told Halim I needed a certificate of employment (for the Bangladeshis); I received $900 each from (the Bangladeshis) (2-ER-319);

11

- I knew it was wrong to submit petitions on behalf of RES International, LLC when (the Bangladeshis) were not actually going to work for RES International, LLC (*id*.);

- I petitioned for them as a favor to Halim Khan (*id*.);

### 2. Final Jury Instructions

After closing arguments, the district court instructed the jury that to find Soriano guilty of Conspiracy to Defraud the United States, the Government had to prove beyond a reasonable doubt that:

> *First*, between on or about August 1, 2018 and on or about February 11, 2019, there was an agreement between to two or more persons to defraud the United States by obstructing the lawful functions of a specific government agency – here, U.S. Citizenship and Immigration Services ("USCIS") – by deceitful or dishonest means;
>
> *Second*, the defendant became a member of the conspiracy knowing of its object and intending to help accomplish it; and
>
> *Third*, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

2-ER-87-88.

### 3. Verdict

The jury deliberated over a span of two workdays, but in aggregate, approximately eight (8) hours before returning a guilty verdict. SER-22.[6]

---

[6] Jurors began deliberations on July 2, 2021, at approximately 3:00 p.m. and recessed at 5:00 p.m. for the Independence Day Holiday weekend. 6-ER-1065-67. Deliberations continued July 6, 2021, at 8:00 a.m., and the jury was seated with a

**D.    Sentencing**

On September 9, 2022, Soriano was sentenced to one month imprisonment, seven months of home detention, with three years of supervised release. 1-ER-2-8. On September 14, 2022, Soriano filed a Notice of Appeal.  2-ER-350-51.

## III.    SUMMARY OF ARGUMENT

The Government did not intentionally elicit false testimony from Officer Verma.  Rather, Officer Verma testified to her knowledge of laws pertaining to the CW-1 Program, including a program requirement that petitioners (businesses) pay the fees of CW-1 petitions.  Albeit Officer Verma conceded on cross examination that she could not cite a specific regulation prohibiting petitioners from recuperating these costs from beneficiaries, to go so far and say the testimony was false, and that the Government intentionally solicited false testimony, mischaracterizes what transpired.

A proper characterization is that Officer Verma testified to her understanding of CW-1 laws, the Government provided a basis for this testimony prior to trial, and Officer Verma was thoroughly cross examined over a two-day period.  Regardless of whether Officer Verma misstated that law, whether a CW-1 petitioner can recuperate costs from beneficiaries is not an element of the crime for which the jury considered in rendering its verdict.

---

verdict that same day at 2:04 p.m. ECF 145.

The district court admitted the statement of Soriano, which was prepared by SA Jonas and adopted by Soriano with a signature. The precedent by this Circuit is clear, and the district court correctly followed the precedent and went so far to memorialize its decision in writing with proper legal analysis.

Furthermore, none of Soriano's alleged errors amounted to an abuse of discretion, but even if they did, all of them were harmless, and the jury had more than enough evidence to convict Soriano.

## IV. ARGUMENT

### A. The testimony of Officer Verma did not amount to false testimony that was material Constitutional error; even if the testimony was false, it was not material and therefore harmless.

#### 1. Standard of Review

A bedrock of the American criminal justice system is that the prosecution must not use false evidence to obtain a criminal conviction. *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc). "Deliberate deception" of a jury is "'inconsistent with the rudimentary demands of justice.'" *Id*. at 978. Under *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the prosecution's use of false testimony violates due process and requires reversal where "(1) the testimony was actually false" or misleading; "(2) the prosecutor knew it was false"; and "(3) the false testimony was material (i.e., there is a reasonable likelihood that the false testimony could have affected the judgment)." *Dow v. Virga*, 729 F.3d 1041, 1048 (9th Cir. 2013); *see*

*also United States v. Agurs*, 427 U.S. 97, 103 (1976). This is colloquially known as the *Napue* test. *See Dow*, 729 F.3d at 1047-48.

If the first two requirements of *Napue* are met, the Court then must determine whether the error is material, that is, whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Dow*, 729 F.3d at 1048. (quotations and emphasis in original) (quoting *Agurs*, 427 U.S. at 103). Under this materiality standard, "'[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Hayes,* 399 F.3d at 984. (quoting *Hall v. Director of Corrections*, 343 F.3d 976, 983-84 (9th Cir. 2003) (per curiam) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).

"Thus, once we have determined whether the *Napue* error was material under the *Agurs* standard, [] [t]he materiality analysis is complete in itself; there is no need for a separate harmless error review." *Hayes,* 399 F.3d at 985.

## 2. Background Law

In the 1959 *Napue* case, the prosecutor elicited and did not correct what he knew to be false testimony—that the state's principal witness had not been promised any consideration by the State in exchange for his testimony. 360 U.S. at 265- 67. "[A] criminal defendant is denied due process of law when a prosecutor either

knowingly presents false evidence or fails to correct the record to reflect the true facts when unsolicited false evidence is introduced at trial." *Hayes,* 399 F.3d at 984.

In 2005, *Hayes* anchors on the same concept: "[T]he state violates a criminal defendant's right to due process of law when, although not soliciting false evidence, it allows false evidence to go uncorrected when it appears." 399 F.3d at 978 (citing *Alcorta v. Texas*, 355 U.S. 28, 78 (1957); *Pyle v. Kansas*, 317 U.S. 213 (1942)). This concept was echoed in 2013: "…[T]he prosecutor knew at the time that this 'representation was erroneous.' Nevertheless, the prosecutor did not correct the detective's testimony." *Dow*, 729 F.3d at 1045.

### 3.   Argument

When applying the facts of Soriano's case to the *Napue* error test and the material test under *Hayes*, Soriano's appellate argument falls flat on all facets. This is because Officer Verma did not testify falsely; even if she did, and without conceding that she did, the prosecution made efforts to ensure the record was correct; and lastly, the testimony was not material to Soriano's conviction, because the jury did not have to consider whether Soriano was authorized to seek reimbursement for petition fees to convict her of Conspiracy to Defraud the United States.

On direct examination, Officer Verma testified that the petitioner was required to pay the fees associated with the Form I-129CW. 3-ER-492-94. On cross examination, Officer Verma further testified that petitioners could not seek

reimbursement of the fees from the beneficiaries. 3-ER-592; 3-ER-603-04. On re-direct, Officer Verma stated she could not recall the specific authority prohibiting the recuperation of fees, because the prohibition was not written directly into the CW-1 regulations. 3-ER-632. On the final day of the trial, the prosecution re-opened its case-in-chief merely for the purpose of affording re-cross examination on the issue, and there, Officer Verma stated that upon further research she could not cite to a specific authority prohibiting reimbursement of CW-1 petition fees. 6-ER-986. The Court must ask now whether this amounts to false testimony. And that answer is no.

In preparation for trial and pre-trial litigation, Officer Verma sent an email to the lead prosecutor for the Government, citing to the regulations pertinent to the CW-1 Program. 2-ER-103-105. In this message, Officer Verma further cites comments from the Code of Federal Regulations ("C.F.R."), which explicitly states the employee (CW-1 beneficiary) is only required to pay the biometric fees, and the petitioner is required to pay the petition fees. *Id*. The Government agreed with Officer Verma's understanding of this regulation based in part on this communication and the Government was transparent with Soriano and the Court about the anticipated testimony.

Thus, under the first two parts of the *Napue* test, 1) Officer Verma's testimony was not false because she testified to her understand of CW-1 laws; and 2) the

prosecution was not aware the testimony would be false because the prosecution interpreted the C.F.R. in the same manner as Officer Verma. Further, at trial, the Government did not go so far to elicit an opinion from Officer Verma, that petitioners could not recuperate fees of the petition from beneficiaries (which was the concern of Soriano during pretrial litigation [*see* Appellant's Opening Br. p. 27]). It was only on cross examination, when prompted by Soriano's counsel, did Officer Verma testify that petitioners could not seek recuperation of fees from beneficiaries. 3-ER-592; 3-ER-603-604. Thus, "the bell was rung" not by the Government, but intentionally on cross examination, opening the door to the issue.

Without conceding that Officer Verma testified falsely, the Government made sure the jury was aware of a potential discrepancy in the testimony by recalling the witness for the sole purpose of cross-examination. 6-ER-986. As the district court noted in its Memorandum Decision, "… the critical issue is whether the jury was given the opportunity to learn of this discrepancy testified to by the Government's witness." SER-10.

Still, whether the petitioner could recuperate fees from a beneficiary is not a material aspect of Officer Verma's testimony. Even if the petitioner could recuperate CW-1 petition fees from the beneficiaries lawfully under the CW-1 program regulations, the amount collected by Soriano from the beneficiaries was more than the cost of the petition. Soriano collected $900 from each of the three

beneficiaries a total of $2,700, and the actual cost of the petition for the three beneficiaries was $1,110, resulting in a surplus or profit to Soriano in the amount of $1,590. 6-ER-1013.

Establishing that Soriano made a profit provided the jury an understanding, in part, of Soriano's motive to commit the crime. However, in closing, the prosecution argued that Soriano's motive was not only profit from the petitions, but also, she did this as a favor to Halim Khan. 6-ER-1021.

While motive is helpful to provide the jury a holistic picture of the case, motive is not a material element the Government was required to prove for the jury to convict Soriano. Contrary to *Hayes*, where the Court noted "…[T]here is little doubt that James's testimony was the centerpiece of the prosecution's case []" 399 F.3d at 985, here, Officer Verma's testimony elicited on cross examination pertaining to the recuperation of fees was not a centerpiece of the case. *See also* SER-41 (Government points out that Office Verma's testimony is not material to the case-in-chief).

As stated in the jury instructions, the Government was required to prove Soriano committed an overt act in furtherance of the conspiracy. 2-ER-87-89. Argued in closing, the jury was given the pick of the litter regarding overt acts by Soriano: 1) Soriano mailed the petition; 2) Soriano received payment; 3) Soriano directed Arnold Reyes to put the petition together so it could be submitted via mail;

4) Soriano picked up a letter from the radio station to ensure the petition could document required advertising; 5) Soriano acquired a fraudulent contract between Kanoa Resort and RES International, LLC, which was included with the petition; and 6) Soriano signed checks that were included with the petition she mailed, knowing the petition was fraudulent. 6-ER-1007-08.

Thus, even if this Court deems the first two parts of the *Agurs* test are satisfied – that the testimony was false, and the Government knew it – Soriano's appellate argument fails because the testimony does not meet the materiality requirement of *Hayes*. Even in the absence of Officer Verma's testimony pertaining to the recuperation of fees, the jury still had a motive and a plethora of overt acts to convict Soriano, and that verdict was worthy of confidence. With this determination, "there is no need for a separate harmless error review." *Hayes,* 399 F.3d at 985.

## B. The district court did not abuse its discretion by admitting statements Soriano made to HSI, but if it did, any error was harmless

### 1. Standard of Review

"The trial court has broad discretion in determining the fitness and qualifications of interpreters[.]" *Chee v. United States*, 449 F.2d 747, 748 (9th Cir. 1971). In reviewing an evidentiary ruling for abuse of discretion, this Court "consider[s] whether the decision was based on relevant factors and whether there was a 'clear error of judgment[,]'" and the ruling will only be reversed if it "'lies beyond the pale of reasonable justification under the circumstances.'" *United States*

*v. Hollis*, 490 F.3d 1149, 1152-53 (9th Cir. 2007) (internal citations omitted). Factual findings underlying an admission decision are reviewed for clear error. *United States v. Garcia*, 16 F.3d 341, 343 (9th Cir. 1994).

### 2. Background Law

"[A]s long as a translator acts only as a language conduit; the use of the translator does not implicate the Confrontation Clause." *United States v. Aifang Ye*, 808 F.3d 395, 401 (9th Cir. 2015). Whether statements made through an interpreter should be considered statements of the original declarant "require[s] an analysis of the facts on a case-by-case basis." *Garcia*, 16 F.3d at 342. *See also United States v. Nazemian*, 948 F.2d 522, 527 (9th Cir. 1991) ("The better approach is to consider on a case-by-case basis whether the translated statements fairly should be considered the statements of the speaker."). Generally, this Court considers "(1) which party supplied the interpreter, (2) whether the interpreter had any motive to mislead or distort, (3) the interpreter's qualifications and language skill, and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated." *United States v. Romo-Chavez*, 681 F.3d 955, 959 (9th Cir. 2012).

### 3. Argument

Soriano asserts that the use of an interpreter by SA Jonas to prepare a written statement containing Soriano's inculpatory statements, which Soriano signed, implicates both hearsay and Confrontation Clause issues. Appellant's Opening Br. pp. 55-63. The district court addressed this argument and issued a memorandum of

its decision to memorialize its reasoning for overruling Soriano's objection. *See* 1-ER-9-18.

In its memorandum, the district court relies upon the established Ninth Circuit four-factor test from *Nazemian*, to determine whether the use of an interpreter generates a level of impermissible hearsay. 948 F.2d at 526. Those factors are (1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill; and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated. *Id.* at 527.

The district court was correct in its analysis and application of the *Nazemian* factors to Soriano's objection. *See* 1-ER-13-14. "At trial in the case at bar, the Court went through the four factors outlined in *Nazemian* finding that (1) the Government provided the interpreter is not dispositive; (2) no motive to mislead is readily discernible; and addressing (3) and (4) together, there is sufficient indicia of accuracy in the written statement to establish both factors." 1-ER-15.

SA Jonas did not select the individual interpreter used for the interview with Soriano. 5-ER-854-57. Instead, he called a phone number to contact the interpreter service contracted by the government. *Id*. There is no evidence the interpreter used had any prior relationship to SA Jonas or anyone involved in the interview. Further, there is no evidence the interpreter had any motive to mislead or be biased with the

translative communication.   Notwithstanding Soriano speaks English, SA Jonas went line by line with Soriano and the interpreter to negate any discrepancy with the translation. *Id*. at 858.

Granted, the use of an interpreter by SA Jonas injects another person into the stream of communication between Soriano and SA Jonas.   However, the Ninth Circuit has made it clear: "A defendant and an interpreter are treated as identical for testimonial purposes if the interpreter acted as a 'mere language conduit' or agent of the defendant." *United States v. Orm Hieng*, 679 F.3d 1131, 1139 (9th Cir. 2012). In the Ninth Circuit, "[w]here an interpreter is a mere language conduit and the statements are viewed as the defendant's own… they do not constitute inadmissible hearsay and their admission does not violate the Confrontation Clause." *United States v. Boskovic*, 472 F. App'x. 607, 608 (9th Cir. 2012).

As concluded by the district court in its memorandum, "the Court finds that the interpreter acted as language conduit and that the April 17, 2020 written statement falls under the hearsay exception in Federal Rule of Evidence 801(d)(2)(B), and therefore not violations of the rules of evidence or the Confrontation Clause."  1-ER-18.

Assuming the admission of Soriano's written statement was erroneous, the error was harmless.  SA Jonas testified that the written statement admitted at trial, summarized the oral statement made by Soriano in the presence of SA Jonas. 5-ER-

903-909.  Thus, even without the written statement, SA Jonas would have testified to the inculpatory oral statements made by Soriano.

### C. The Government's evidence was legally sufficient

#### 1. Standard of Review

Rulings relating to the sufficiency of the evidence are reviewed *de novo* and follow the "two-step inquiry" set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc).  First, this Court must consider the evidence presented at trial in the light most favorable to the prosecution, presuming that the trier of fact resolved all potentially conflicting inferences in favor of the prosecution and deferring to that resolution.  *Id.*  Then, at the second step, this Court "must determine whether this evidence, so viewed, is adequate to allow ***any*** rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt."  *Id.* (emphasis in original) (internal quotations omitted).

The Supreme Court has made clear that "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts."  *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (internal quotations omitted).  The Court has even gone so far as to characterize "the only question under *Jackson* is whether [the jury's verdict is] so insupportable as to fall below the threshold of bare rationality."  *Id.* at 656.  Accordingly, this Court may find the evidence

insufficient only in those rare instances, for example, where "mere speculation, rather than reasonable inference," supports the prosecution's case, or when there is a "total failure of proof of [a] requisite element." *Nevils*, 598 F.3d at 1167 (internal quotation omitted).

## 2. Statute and Essential Elements

The Conspiracy to Defraud the United States statute in relevant part provides:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371.

According to this Court's model criminal jury instructions at the time of trial, the elements of the offense are:

> First, beginning on or about [date], and ending on or about [date], there was an agreement between two or more persons to defraud the United States by obstructing the lawful functions of [specify government agency] by deceitful or dishonest means as charged in the indictment;

> Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

> Third, one of the members of the conspiracy performed at least one overt act [on or after [date]] for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

Ninth Circuit Manual of Model Criminal Jury Instructions (2010) ("Model Instructions") No. 8.21.[7]  The Model Instructions further state:

An agreement to defraud is an agreement to deceive or cheat.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy.  It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another.  You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy.  Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators.  On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

An overt act does not itself have to be unlawful.  A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy.  The government is not required to prove that the defendant personally did one of the overt acts.

---

[7] These instructions are the same as those given by the district court in this case. S*ee* 2-ER-87-88.

*See* Model Instructions 8.21. These instructions were also given by the district court in this case, except language from the 8.21 Model Instruction comments were incorporated as follows, and emphasized with italics:

> An agreement to defraud is an agreement to deceive or to cheat, *but one who acts on an honest and good faith misunderstanding as to the requirements of the law does not act with an intent to defraud simply because her understanding of the law is wrong or even irrational. Nevertheless, merely disagreeing with the law does not constitute a good faith misunderstanding of the law because all persons have a duty to obey the law whether or not they agree with it.*

*See* 2-ER-88.

### 3.    Argument

At trial, the Government called four witnesses in its case-in-chief and admitted three exhibits. 2-ER-205-320; SER-23-30.  Collectively, the witnesses provided an overview of the CW-1 Program, and how RES International, LLC petitioned for foreign beneficiaries to obtain legal immigration status so those beneficiaries could work in the CNMI.  Soriano was at the heart of these petitions as a manager at RES International, LLC.

The evidence showed Soriano and co-defendant Halim Khan agreed to submit fraudulent CW-1 petitions on behalf three Bangladeshis, the beneficiaries, Aminul Islam, Faroque Hosen, and Mohammad Rasel Khan.  One of the beneficiaries is the brother of co-defendant Halim Khan.  Soriano agreed to facilitate the submission of

the CW-1 petition for the beneficiaries, as a favor to co-defendant Halim Khan, and because she made a profit from it.

Soriano directed Arnold Reyes to put the petition together, Soriano and co-defendant Halim Khan manufactured a fraudulent employment contract to be included with the petition, and Soriano submitted the petition to USCIS knowing the petition was fraudulent. Soriano confessed to this criminal conduct, and the testimony of Arnold Reyes supports Soriano's confession.

The jury heard and weighed the evidence and rendered a verdict of guilty in less than eight hours of deliberation. With evidence viewed in favor of the prosecution, this Court should uphold the jury's verdict.

## V. CONCLUSION

For the reasons given above, Soriano's conviction should be affirmed.

Respectfully submitted on December 22, 2023 (ChST).

SHAWN N. ANDERSON
United States Attorney

By:  */s/ Albert S. Flores, Jr.*
ALBERT S. FLORES, JR.
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on December 22, 2023 (ChST), I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Albert S. Flores, Jr.*
ALBERT S. FLORES, JR.
Assistant United States Attorney

## CERTIFICATE AS TO RELATED CASES

Pursuant to Circuit Rule 28-2.6(a), I certify that, as of December 22, 2023 (ChST), I am not aware of any related cases now pending before the Ninth Circuit that may be deemed related to this one.

*/s/ Albert S. Flores, Jr.*
ALBERT S. FLORES, JR.
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7), I certify that, as of December 22, 2023 (ChST), this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains less than **13,000** words.

*/s/ Albert S. Flores, Jr.*
ALBERT S. FLORES, JR.
Assistant United States Attorney