APPEAL NO. 22-10229

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA

Plaintiff-Appellee,

v.

SERVILLANA SORIANO,

Defendant-Appellant.

FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

District Court No. 1:20-cr-00007-RVM-1

**APPELLANT'S REPLY BRIEF**

Mark B. Hanson, Esq.
Second Floor, Macaranas Building
Beach Road, Garapan
PMB 738, Box 10,000
Saipan, Northern Mariana Islands 96950
Telephone: (670) 233-8600
Fax: (670) 233-5262
E-mail: markbhanson@gmail.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

1.  THE GOVERNMENT PATENTLY MISREPRESENTS THE FACTS. . . 1

2.  VERMA'S TESTIMONY WAS FALSE AND MATERIAL. . . . . . . . . . . . 3

3.  MS. SORIANO WAS DENIED THE RIGHT TO CONFRONT
    THE PRIMARY EVIDENCE AGAINST HER BECAUSE OF
    THE DISTRICT COURT'S ERRONEOUS APPLICATION OF
    FLAWED CIRCUIT PRECEDENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TABLE OF AUTHORITIES

CASES:

*Belmontes v. Woodford*, 350 F.3d 861 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 4

*Crawford v. Washington*,
    514 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) . . . . . . . . . . . . . . . 11

*Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005) (en banc). . . . . . . . . . . . . . . . . 4

*United States v. Agurs*,
    427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) . . . . . . . . . . . . . . . . . . 4

*United States v. Aifang Ye*,
    808 F.3d 395 (9th Cir. 2015)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11

*United States v. Nazemian*,
    948 F.2d 522 (9th Cir. 1991)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

OTHER:

Commonwealth of the Northern Mariana Islands
    Transitional Worker Classification, 79 FR 55502 (2011)
    (to be codified at 8 CFR Parts 103, 214, 274a and 299). . . . . . . . . . . . . . 3

Defendant/Appellant Servillana Soriano ("Ms. Soriano" or "Defendant") submits as follows in reply to the Government's December 21, 2023 Answering Brief.

1. THE GOVERNMENT PATENTLY MISREPRESENTS THE FACTS.

As it did at trial, the government takes extraordinary liberties with its recitation of the "facts" of the case that in many instances do not comport with the actual facts adduced at trial.

One example is the Government's seemingly innocuous, but repeated and potentially impactful misstatements of fact in its Answering Brief that Ms. Soriano submitted multiple fraudulent petitions to USCIS.[1] The Government knows that to be false. The trial testimony to which the Government cites in its Answering Brief does not support the Government's factual contention that RES or Soriano were doing anything "the same as Misamis Co.," much less that RES submitted multiple fraudulent petitions for former Misamis Co. workers as the government alleges in its brief. Answer Brief at 2. *See also* 3 ER 457.

---

[1] *See, e.g.*, Answering Brief at 2 (HIS determined RES International, LLC ("RES") was also submitting petitions for CW visas under the same fraudulent guise as Misamis Co.; *id.* at 27 ("Soriano was at the heart of these petitions . . . ."); id. (The evidence showed Soriano and co-defendant Halim Khan agreed to submit fraudulent CW-1 petitions on behalf three Bangladeshis [sic] . . . .").

Indeed, the facts at trial were that RES submitted exactly one petition to USCIS — the Petition at issue in the case — to employ three former Misamis Co. workers. *See* 3 ER 470. There was never an allegation much less evidence to support an allegation that RES ever submitted a fraudulent petition to USCIS other than the single Petition at issue in this case.

Additionally, Verma's false testimony on the issue of legally proscribed conduct that Ms. Soriano was alleged to have violated was set out in detail in the Opening Brief with quotes to the transcripts. *See* Opening Brief at 25-27. However, in its argument that Verma did not testify falsely, the Government eschews her actual testimony, offering instead an alternate version excising the prosecutor's gratuitous questioning and Verma's unequivocal testimony on redirect examination and adding the Government's supposed pre-trial "concurrence" with Verma's legal opinion on the supposed existence and applicability of some unidentifiable proscriptive regulation. *See* Answering Brief at 17.

Moreover, in the process of suggesting that Verma's opinion was, in fact, correct, the Government manages to further highlight the error by referring the Court to Verma's supposed pre-trial citation to "the comments from the Code of Federal Regulations" as the legal authority for the proscriptive regulation to which

she eventually testified evidenced one of Ms. Soriano's core violations of USCIS regulations at the very heart of the alleged illegal scheme charged. Answering Brief at 17. In fact, Verma's pretrial supporting authority (at 2 ER 104) was an excerpt from the "Public Comments Received on the Interim Final Rule" section of the USCIS' September 7, 2011 Final Rule published in the Federal Register (79 FR 55502) not part of any regulations. Notably, even USCIS' response to comments submitted regarding beneficiary fees and petition requirements (79 FR 55514) still does not support Verma's erroneous regulatory contention.

2. VERMA'S TESTIMONY WAS FALSE AND MATERIAL.

The Government concedes that Verma was called to "provide background and *an explanation of laws pertaining to the CW-1 Program.*" Answering Brief at 6 (emphasis added) (citing Verma's trial testimony at 3 ER 483-84). As detailed in the Opening Brief at 17-24, Ms. Soriano contended pretrial that Verma was going to testify falsely and that the government was going to use her false testimony as principal evidence of the "scheme" the Government alleged was at the heart of the charged conspiracy. And, indeed, that is what happened.

Notwithstanding the actual absence of any federal regulation that Verma unequivocally testified in fact existed somewhere and in fact proscribed the

conduct the Government made central to its arguments to the jury, the Government now argues that "it goes too far to say that Verma's testimony was false. . ." and suggesting that it is somehow a "mischaracterization" to say that the Government intentionally elicited Verma's false testimony at trial. Answering Brief at 13.

Simply casting aside the highly prejudicial effect of that testimony, the Government then concludes that "[r]egardless of whether Officer Verma misstated that law, whether [Defendant Soriano] could recuperate costs from [the Petition] beneficiaries is not an element of the crime for which the jury considered in rendering its verdict." Answering Brief at 13. *See also* "motive" argument at 19.

The Government then attempts to further narrow its argument that it was not "material" because "the jury did not have to consider" the false testimony in order to convict. Answering Brief at 16.

Neither of those arguments meets the applicable *Agurs* materiality standard of "'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Hayes v. Brown*, 399 F.3d 972, 984 (quoting *Belmontes v. Woodford*, 350 F.3d 861, 881 (9th Cir. 2003) (quoting *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

After attempting to rewrite Verma's actual trial testimony and the examinations that elicited it, the Government then argues both that (1) "the government did not go so far to elicit from Officer Verma that petitioners could not recuperate fees of the petition from beneficiaries" and that (2) Soriano's counsel "opened the door" to the false testimony in any case. Answering Brief at 18.

In actual fact, on cross-examination, Verma testified as follows:

> [DEFENSE COUNSEL:] And at this time, I mean, from -- from the initial -- from the 2011 regulations up until beyond this date, was there any express regulation that prohibited the -- the CW petitioner from getting reimbursed for filing fees from the beneficiaries?
>
> [VERMA:] There -- they -- *the petitioner is not allowed to get reimbursed any of the fees*, because then that would be an indication that the fees technically are still being collected by the petitioner. They're paying for their own petition and employment benefits in the CW world.
>
> [DEFENSE COUNSEL:] What regulation are you referring to?
>
> [VERMA:] Um, I -- truthfully, I don't know off the top of my head what exact regulation it is, but I know that it is prohibited from not collecting or deducting or reimbursing the petitioner with the fees that they paid for their forms.

3 ER 591-592 (emphasis added).

Then, on a pointed, intentional and seemingly gratuitous redirect examination by the Government, she further testified (in relevant part):

> [PROSECUTOR:] Mr. Hanson asked you about U.S. CIS having a regulation or a rule or something talking about petitioners not being able to seek reimbursement from the beneficiaries.
>
> [VERMA:] Right.
>
> * * *
>
> [VERMA:] There is a regulation in place, yes. I just don't -- I – unfortunately, I don't know exactly where it is, 'cause it's not directly in the CW-1 regulations.
>
> [PROSECUTOR:] Okay. But there was an express prohibition in place at the time of this petition?
>
> [VERMA:] Yes.

3 ER 631-632.

Still refusing to concede the falsity of the testimony without more, the Government again eschews the effects of the false testimony on the jury because "it is not a material aspect of Officer Verma's testimony." Answering Brief at 18. The Government apparently does not even believe its own words, summing up its brief by arguing: "Soriano agreed to facilitate the submission of the CW-1 petition for the beneficiaries, as a favor to co-defendant Halim Khan *and because she made*

*a profit from it.*" Answering Brief at 28 (emphasis added). *See also, e.g.,* Government's closing argument to the jury at 6 ER 1007 ("She received payment. The Defendant received payment from each of the Bangladeshis. All right. She got $900 for each Bangladeshi for them to get their CW-1 visas. That's an overt act. She received payment.").

As demonstrated in the Opening Brief, "immigration status for sale" was as the very core of the Government's case and front and center in all of its examinations of witnesses and arguments to the jury. It is wholly untenable for the Government to now suggest that the payments for that status were "not a centerpiece of the case."[2] *See* Opening Brief at 46-47, 61-63.

---

[2] Notably, the Government cites to *its own closing argument* as its evidence of "the actual cost of the petition," a fact which it never actually elicited at trial, but that it certainly argued with broad inferences to the jury in its opening (3 ER 430) and in closing (6 ER 1012-13, 1021, 1024). *See* Answering Brief at 18-19. The spurious citation does, however, further highlight exactly why Verma's false testimony was material Constitutional error introduced and doubled down on by the Government.

3. MS. SORIANO WAS DENIED THE RIGHT TO CONFRONT THE PRIMARY EVIDENCE AGAINST HER BECAUSE OF THE DISTRICT COURT'S ERRONEOUS APPLICATION OF FLAWED CIRCUIT PRECEDENT.

As the Government has done in other cases in which it has employed its "*Aifang Ye* technique"[3] of fabricated confessions styled as "written statements," the Government props up the legal fiction of the "*Nazemian* shield"[4] regarding interpreters as a language conduit and argues decided Ninth Circuit law essentially prohibits review of the Court's admission of these nefariously produced Aces that are now always in the Government's hand in this District. However, the Government does not address Ms. Soriano's argument that the issue is not one of interpreters acting as mere language conduits, but of the inability of a defendant, here Ms. Soriano, to cross-examine a witness regarding the creation, translation, execution and indeed the very substance of the written statement. *See* Opening Brief at 54-57. Because the *Aifang Ye* statements are, as the Government argues, "viewed as the defendant's own," the Government essentially argues (in every case) that the agent prepared written statement, true or not, is admissible without

---

[3] *United States v. Aifang Ye*, 808 F.3d 395 (9th. Cir. 2015).

[4] *United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991).

question. Answering Brief at 23. "[PROSECUTOR] He can say anything under the sun, and if she adopts it or agrees to it, it's now her statement." 1 ER 32.

And while the Government notes that SA Jonas testified that the written statement here "summarized the oral statement made by Soriano in the presence of SA Jonas," the Government is again misrepresenting the record when it suggests that SA Jonas "would have testified" to the same inculpatory oral statements that he himself included in her fabricated Written Statement. Answering Brief at 24.

In reality, at trial SA Jonas was cross-examined extensively at trial on the subject and continually referred to Ms. Soriano's Written Statement when questioned as to the details of his interview of Ms. Soriano almost month before he prepared and had Ms. Soriano sign the Written Statement. *See*, *e.g.*, SA Jonas Testimony, 5 ER 899-930 (cross-examination); 921 ([SA JONAS] "It's in the statement."); 922 ([SA JONAS] "only in the statement"); 927 ([SA JONAS] "Because if the totality of – I'm sitting there listening. They're taking notes. There's a lot going on back and forth."). "Everything in the April 17th statement *came from* the March 27th interview." 5 SA Jonas testimony, ER 932 (emphasis added). *See also* Opening Brief at 11-17. He decidedly would NOT testify to the same inculpatory statements except to say "if it is in there she said it."

The Government also does not address the glaring problem with SA Jonas producing the Written Statement that intentionally incorporated several false facts as a supposed "accuracy check," without actually cataloguing all of those intentionally falsified facts in the pre-reviewed draft as a matter of proper evidentiary procedure to ensure that he could "prove" that Ms. Soriano identified and corrected "all" of SA Jonas' fabrications.

As argued in the Opening Brief, by allowing the *Aifang Ye* model to persist, the Court permits the government to project a speculative and untrue scenario to the jury, *e.g.*, in this case that the Written Statement is actually something that Ms. Soriano said and did, knowingly and intentionally, almost two years earlier in 2018.

What's more, the process essentially shields the statement from any meaningful cross-examination allowing the government agent that actually wrote the statement — together with its undisclosed, intentionally embedded falsities — to "forget" what Ms. Soriano actually said and rely instead on the Written Statement itself and an un-evidentiary proffer of the "totality of the interview" that was, itself, removed in time and influenced by intervening information and the agent's own under-informed view of the same.

Here, the Court simply accepted SA Jonas' bald assertion that whatever intentionally false facts he included in the Written Statement Ms. Soriano identified and changed in her own handwriting leaving nothing to the Written Statement that was inaccurate and only including what she actually said in her interview a month earlier — as inconsistent as that proposition is with the actual facts of the case. *See, e.g.*, 1 ER 17-18.

Ms. Soriano submits that the Court erred in refusing to consider the efficacy of SA Jonas' testimony regarding the Written Statement because of misplaced adherence to the flawed process sanctioned in *Aifang Ye*. Because of that error, Ms. Soriano was deprived of her constitutional right to confront SA Jonas and challenge the Written Statement he prepared and hid behind. *See, e.g., Crawford v. Washington*, 514 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

## CONCLUSION

Based on the foregoing, the Court should find that (1) the Verma false testimony was improper and material, (2) Ms. Soriano's signed statement was inadmissible hearsay and (3) without the Verma false testimony and Ms. Soriano's signed statement there was insufficient evidence at trial from which any reasonable juror could have found Ms. Soriano guilty of a conspiracy to defraud the United

States and, in light thereof, the Court should vacate Ms. Soriano's conviction and mandating or directing the entry of a judgment of acquittal.

Respectfully submitted this 12th day of February, 2024 (PST).

/s/ Mark B. Hanson
MARK B. HANSON

Second Floor, Macaranas Building
4165 Beach Road, Garapan
PMB 738 P.O. Box 10,000
Saipan, N. Mariana Islands 96950
Telephone: (670) 233-8600
E-mail: markbhanson@gmail.com

Attorney for *Defendant Servillana Soriano*

# CERTIFICATE OF COMPLIANCE
## PURSUANT TO FED. R. APP. P. 32(A)(7)(C) AND CIR. R. 32-1
## APPEAL NO. 22-10229

I certify that, pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the foregoing <u>reply brief</u> is proportionately spaced, has a typeface of 14 points and contains less than 7,000 words. Specifically, the reply brief contains approximately 2,351 words as determined by the word count feature contained in WordPerfect (not including Cover, Tables and Certificates).

DATED this 12th day of February, 2024 (PST).

                                          /s/ Mark B. Hanson
                                              MARK B. HANSON

                                        Second Floor, Macaranas Building
                                        4165 Beach Road, Garapan
                                        PMB 738 P.O. Box 10,000
                                        Saipan, N. Mariana Islands 96950
                                        Telephone: (670) 233-8600
                                        E-mail: markbhanson@gmail.com

                                        Attorney for *Defendant Servillana Soriano*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on this 12th day of February, 2024(Pacific Standard Time).

/s/ Mark B. Hanson
_____
MARK B. HANSON, ESQ.